Opinión concurrente emitida por el
Juez Asociado Señor Estrella Martínez,
a la cual se unen los Jueces Asocia-dos Señores Martínez Torres y Rivera García.
Concurro con el dictamen de la Opinión mayoritaria por entender que el legislador sí contempló las variaciones del costo total de la obra y hasta las órdenes de cancelarla en su totalidad para computar el pago en concepto de arbi-trios de construcción y patentes municipales, y una posible devolución de lo pagado. En consecuencia, respetuosa-mente considero que el Tribunal no debe trastocar la polí-tica pública adoptada en la legislación municipal contribu- *693 tiva que rige los términos para reclamar rembolsos y reintegros en concepto de esos pagos.
I
Acogemos los hechos expuestos por la Opinión mayoritaria. Estos representan lo acaecido en el caso ante este Tribunal.
Resaltamos que el 9 de octubre de 2000, Muñiz Burgos, Inc. pagó arbitrios de construcción y patentes al Municipio de Yauco por un proyecto para la construcción de una escuela. La cantidad pagada correspondía al cómputo apli-cable para ambos cargos. Transcurridos siete años desde el pago, la Autoridad de Edificios Públicos emitió un cambio de orden que redujo el costo de la obra. Como consecuencia de ello, el 13 de febrero de 2008, Muñiz Burgos, Inc. solicitó que se le devolvieran $6,251.35 por el pago en exceso de arbitrios de construcción y patentes. El municipio se negó a ello y sostuvo que el reclamo instado por Muñiz Burgos, Inc. excedió los términos establecidos por la ley.
El Tribunal de Primera Instancia ordenó la devolución del dinero reclamado por Muñiz Burgos, Inc. Esta decisión fue impugnada por el municipio de Yauco (Municipio) ante el Tribunal de Apelaciones, el cual confirmó al foro primario. Inconforme, el Municipio acudió ante este Tribunal. Cuestionó el punto de partida utilizado para el cómputo del periodo que tenía Muñiz Burgos, Inc. para ejercer su reclamo y la imposición de la partida de honora-rios de abogado.(1)
*694 II
A. Conforme al ordenamiento constitucional puertorri-queño, la facultad para imponer contribuciones compete primordialmente a la Rama Legislativa. La Constitución del Estado Libre Asociado de Puerto Rico dispone que el poder para imponer y cobrar contribuciones, y autorizar que los municipios las impongan y cobren se ejercerá según lo disponga la Asamblea Legislativa, y nunca será rendido o suspendido. Véanse: Art. II, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 420; Cía. Turismo de P.R. v. Mun. de Vieques, 179 D.P.R. 578, 583-584 (2010). Ahora bien, el Estado puede, expresamente, delegar su facultad para imponer contribuciones. Interior Developers v. Mun. de San Juan, 177 D.P.R. 693, 703 (2009).
Con el fin de delegar a los municipios la potestad de imponer tributos para que éstos puedan recaudar fondos para brindar servicios a sus habitantes, la Asamblea Legis-lativa aprobó la Ley Núm. 81-1991, según enmendada, co-nocida como la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (Ley de Municipios Autónomos), 21 L.P.R.A. sec. 4001 et seq. En lo pertinente, la Rama Legislativa delegó, a través del Art. 2.002(d), 21 L.P.R.A. sec. 4052(d), la potestad de imponer y cobrar con-tribuciones, derechos, licencias, arbitrios de construcción y otros arbitrios e impuestos, tasas y tarifas razonables den-tro de sus límites territoriales, en la medida que éstos fue-ran compatibles con el Código de Rentas Internas y las leyes del Estado.
En lo relevante, el Art. 2.002 de la Ley de Municipios Autónomos, supra, 21 L.P.R.A. sec. 4052, dispone que se requiere el pago de arbitrio de construcción correspon-diente al proyecto, previo al comienzo de dicha obra, y re-gula cómo procede el pago del arbitrio de construcción. En cuanto al tema que nos concierne sobre las variaciones re- *695 lacionadas con el pago de arbitrios, una lectura del Art. 2.002(d) de la Ley de Municipios Autónomos, supra, revela que el legislador contempló expresamente la posibilidad de que surjan órdenes de cambio que autoricen alguna varia-ción al proyecto inicial y, por ende, afecten el pago de arbi-trios de construcción. En ningún momento el legislador li-mitó el lenguaje de esas variaciones por órdenes de cambio a las que aumentan el valor de la obra. Por el contrario, el lenguaje utilizado fue inclusivo y el articulado impone un deber ministerial a las autoridades municipales para que verifiquen el alcance de la variación. En caso de que la variación constituya una ampliación del costo total original, se activa la consecuencia jurídica de computar el pago del arbitrio adicional al disponer que
[e]n aquellos casos donde surja una orden de cambio en la cual se autorice una variación al proyecto inicial, se verificará si dicho cambio constituye una ampliación y de así serlo se com-putará el arbitrio que corresponda. 21 L.P.R.A. sec. 4052(d).
El lenguaje de la citada disposición es diáfano. De éste surge que, en efecto, la Asamblea Legislativa consideró que los proyectos pueden contener órdenes de cambio que los varíen. Al así hacerlo, avaló la imposición de un arbitrio adicional a las ampliaciones, pero no concedió un remedio de rembolso de pago de arbitrios de construcción producto de órdenes que representen una reducción en el costo total de la obra. Es decir, el legislador no concedió una acción de rembolso en concepto de una orden de cambio que repre-sente una reducción en el costo total de la obra. Una lec-tura integrada de la ley así lo refleja. Veamos.
El Art. 2.007 de la Ley de Municipios Autónomos, supra, 21 L.P.R.A. sec. 4057, dispone cómo se efectúa el pago del arbitrio de construcción. Para ello, la persona responsable de llevar a cabo la obra somete a la Oficina de Finanzas una Declaración de Actividad detallada en la que se describe el costo de la obra. El Director de Finanzas revisa el valor estimado e informa su decisión al respecto para de- *696 terminar el arbitrio que corresponda. Éste puede aceptar o rechazar el valor estimado de la obra. Una vez se acepte el valor estimado de la obra, el contribuyente deberá pagar el arbitrio en un término de quince días laborables.
Al pagar el arbitrio, el contribuyente tiene tres opciones: (1) pagar el arbitrio aceptando la determinación del Director de Finanzas como una determinación final; (2) negarse a efectuar el pago, lo cual implica detener la construcción y solicitar la correspondiente revisión judicial, o (3) pagar el arbitrio bajo protesta y solicitar por escrito la reconsidera-ción de la determinación preliminar del Director de Finanzas. En todas estas situaciones, una vez se reciba el pago identificando el arbitrio del que se trata, el oficial de la Oficina de Recaudaciones de la División de Finanzas “emitirá un recibo de pago identificando que se trata del arbitrio sobre la actividad de la construcción”. (Énfasis suplido). 21 L.R.P.A. sec. 4057(c).
A su vez, el Art. 2.007 de la Ley de Municipios Autóno-mos, supra, especifica el procedimiento para las reclama-ciones relacionadas con el pago de arbitrios. Para esto, la Asamblea Legislativa estableció el proceso para el pago de deficiencia, el rembolso de arbitrios de construcción paga-dos en exceso y su reintegro. En el caso de deficiencias, este mismo Artículo reconoce el derecho del municipio a solicitar evidencia acreditativa del costo final del proyecto para verificar aumentos en el valor final de construcción con el propósito de imponer un pago de arbitrios por el aumento en el valor de la obra.(2) Igualmente, el articulado dispone el proceso cuando procede una acción de rembolso y cuando deriva en una de reintegro del pago de arbitrios de construcción. Todas estas instancias están reguladas en el inciso (e) del citado artículo.
Contrario a lo concluido por la Opinión mayoritaria, el *697 Art. 2.007 de la Ley de Municipios Autónomos, supra, re-conoce y establece claramente las circunstancias en las que un contribuyente tiene derecho a que se le devuelva el pago de un arbitrio. Ello incluye las circunstancias del caso ante nuestra consideración. Las acciones para solicitar la devo-lución de lo pagado por arbitrios de construcción son: la acción de rembolso y la de reintegro. Examinemos sus diferencias.
La acción de rembolso está regulada en el primer pá-rrafo del inciso (e) del Art. 2.007 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4057(e). Ésta se limita a pro-veerle al contribuyente la oportunidad de recobrar el pago en exceso como consecuencia de un error al presentar la declaración del valor de la obra que éste informó para la determinación del arbitrio. En estas circunstancias, nos encontramos ante un mero cómputo en cuya ecuación no media el hecho de que haya comenzado o no la obra, y mucho menos si han ocurrido órdenes de cambio. Ese in-ciso parte de la premisa de que el contribuyente pagó arbi-trios en exceso a lo que correspondía conforme a la Decla-ración de Actividad. Recuérdese que al hacer el pago de arbitrios para poder comenzar la obra de construcción, se acepta la determinación del Director de Finanzas como una determinación final. Por ello, el rembolso puede suce-der cuando existe un error matemático al determinar el arbitrio de construcción o cuando se paga bajo protesta y se solicita por escrito la reconsideración de la determinación preliminar del Director de Finanzas, conforme dispone la ley. En este último panorama, el Director de Finanzas no-tificará la determinación final que realice en cuanto al ar-bitrio que corresponda y la notificará al contribuyente.
Además, de la acción del rembolso, el propio Art. 2.007 de la Ley de Municipios Autónomos, supra, establece el derecho a reclamar un reintegro por no culminarse o rea-lizarse la obra. En este sentido, la acción de reintegro obliga a que se determine la etapa en la cual se encuentra *698 la obra. La fase del proyecto por el cual se pagó el arbitrio y se solicita reintegro es determinante para establecer la cantidad de dinero a la que tiene derecho el contribuyente. En la acción de reintegro, el contribuyente podrá obtener la totalidad de lo pagado en concepto de arbitrios de cons-trucción si ésta no se ha comenzado. En caso de que hu-biera comenzado a construir o hubiese comenzado cual-quier actividad de construcción, el contribuyente tendrá derecho a solamente el cincuenta por ciento de reintegro. Mun. de Utuado v. Aireko Const. Corp., 176 D.P.R. 897, 906-907 (2009).
Ahora bien, contrario a lo expresado por la Opinión ma-yoritaria, una lectura del Art. 2.007 de la Ley de Munici-pios Autónomos, supra, demuestra que el legislador reguló el tiempo que posee el contribuyente para solicitar el rein-tegro de la totalidad o la mitad del arbitrio de construcción pagado. Para ello, dispuso que
[n]o habrá lugar para solicitar reintegro de suma alguna luego de transcurridos seis (6) meses después de la fecha en que se expidió el recibo de pago del arbitrio determinado para una obra en particular. (Enfasis suplido). 21 L.P.R.A. sec. 4057(e).
Lo antes expuesto demuestra claramente la intención del legislador de prohibir de forma absoluta la devolución del pago en concepto de arbitrios, una vez hayan transcu-rrido seis meses desde la fecha en que se expidió el recibo de pago del arbitrio determinado para una obra en particular. Como vimos, el legislador dispuso que el Oficial de Recaudaciones de la División de Finanzas expide el re-cibo de pago del arbitrio determinado cuando éste se paga. Por ende, el término de seis meses comienza a transcurrir desde que se expidió el recibo de pago necesario para co-menzar la obra.
El legislador, al vislumbrar el proceso para el pago de arbitrios de construcción, consideró la realidad de las órde-nes de cambio. Dispuso que una ampliación del valor esti-mado de la obra obliga a pagar el arbitrio correspondiente. *699 Esa expresión no implica ni puede constituir un funda-mento para concluir que el legislador desconocía o no aten-dió el efecto de situaciones en las que haya una disminu-ción del valor estimado de la obra. El legislador estableció un proceso para el recobro de arbitrios en exceso en el cual se determine que procede un reintegro. De igual forma, determinó la cantidad del reintegro al implantar que pro-cede su totalidad antes de comenzada la obra y solo la mi-tad una vez ésta se haya iniciado. Claro está, ello siempre y cuando se reclame dentro del periodo de seis meses desde que se expidió el recibo de pago del arbitrio de construc-ción, es decir, cuando éste se pagó.
B. En cuanto al pago de patentes, aplica el mismo principio esbozado con relación al pago de arbitrios de construcción.
La Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974, según enmendada, 21 L.P.R.A. sec. 651 et seq., permite a los municipios el cobro de una contribución a toda persona dedicada, con fines de lucro, a la prestación de cualquier servicio, o a la venta de cualquier bien a cual-quier negocio financiero o negocio dentro de sus límites territoriales. Véase 21 L.P.R.A. secs. 651a(16) y 651b.
Similar al cómputo de los arbitrios de construcción, el cálculo de la patente emplea como base la declaración so-bre el volumen de negocios que realiza el contribuyente. 21 L.P.R.A. secs. 651f(a) y 65li. El contribuyente pagará por anticipado la patente que corresponda. 21 L.P.R.A. sec. 651j.
Al aprobar la Ley de Patentes Municipales, el legislador auscultó el supuesto en el que el contribuyente pague una cantidad mayor a la que corresponda o una cantidad menor. Al hacerlo, consideró restringir acreditar o reinte-grar el exceso del pago de patentes a cuando se determine que haya una deficiencia. 21 L.P.R.A. sees. 65 In y 652e.
Por ello, la See. 34 de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 652f, que rige los reintegros y créditos por *700 el pago de patentes dispone que éste será de “aplicación únicamente cuando el Director de Finanzas determine y notifique una deficiencia...”. (Énfasis suplido). 21 L.P.R.A. sec. 652e. A estos efectos, el referido artículo establece que cuando haya un pago en exceso de patentes, el monto de éste se acreditará contra cualquier patente sobre volumen de negocio o plazo de la misma entonces exigible a la persona, y cualquier remanente se reintegrará inmediata-mente a la persona.
Ahora bien, la Sec. 34 de la Ley de Patentes Municipa-les, supra, limita el tiempo en el cual se puede solicitar el reintegro, crédito o rembolso del pago en exceso. El mismo está atado a un término de cuatro años desde que se pre-sentó la declaración de volumen de negocios o tres años desde que se pagó la patente. De forma expresa, el artículo establece el efecto de no presentar la reclamación a tiempo al disponer que “reo se concederá o hará crédito o reintegro alguno después del vencimiento de aquél de dichos períodos que expire más tarde”. (Énfasis suplido). 21 L.P.R.A. sec. 652f(b)(1).
La Ley de Patentes Municipales consideró que el pe-riodo de prescripción se puede renunciar cuando el Director de Finanzas y el contribuyente acuerden prorrogar el periodo que tiene el Director de Finanzas para la tasación y el cobro de una deficiencia. Entonces, dentro de ese tér-mino se podrá radicar una solicitud de crédito o reintegro conforme dispone la See. 34 de esta ley, 21 L.P.R.A. sec. 652f.
De acuerdo con lo anterior, destaca que la Ley de Paten-tes Municipales contiene un procedimiento detallado para la solicitud de reintegro y crédito del pago por exceso de patentes. Éste está vinculado al cobro de deficiencias. El estatuto contiene explícitamente el periodo prescriptivo para la acción de reintegro de patentes pagadas en exceso. Igualmente, establece las excepciones para no aplicar el periodo prescriptivo.
*701 III
En el caso de autos, nos encontramos realmente ante una solicitud de reintegro por el pago de arbitrios de cons-trucción que excede el término de seis meses dispuesto que confirió el legislador y una solicitud para el reintegro de patentes que excede los términos contemplados en la legislación.
La parte recurrida pagó la suma exacta determinada al comienzo de la obra para las patentes y los arbitrios de construcción. Por lo tanto, en el caso de los arbitrios de construcción, no estamos ante la realidad jurídica ni de hechos en la que aplica una acción de rembolso. La Opinión mayoritaria reconoce ese hecho al explicar que Muñiz Bur-gos, Inc. no entendió que el pago de arbitrios fue erróneo o que la declaración del municipio en cuanto al valor de la obra y los arbitrios computados era incorrecta. Como esta-blecimos, cuando Muñiz Burgos, Inc. pagó los arbitrios, y conforme dispone el Art. 2.007 de la Ley de Municipios Autónomos, supra, aceptó el arbitrio impuesto por el Director de Finanzas como una determinación final. Así, no es-tamos ante una acción de rembolso contemplada en el primer párrafo del inciso (e) del Art. 2.007.
La solicitud de Muñiz Burgos, Inc. es el reintegro par-cial del arbitrio pagado. Sostiene su reclamo en la orden de cambio que disminuyó el valor de la obra. El legislador conocía la posibilidad de que la obra se afecte con las órde-nes de cambio, pero no reconoció una acción de devolución de rembolso en estos casos. De esta forma evitó la posibili-dad de afectar los ingresos municipales y provocar un caos en la planificación presupuestaria mediante la reducción de los costos de la obra a través de las órdenes de cambio. La acción de rembolso fue limitada a aquellos pagos en exceso al arbitrio que correspondía según la declaración de actividad o cuando se pagó bajo protesta. De otra parte, la acción de reintegro estatuida en el Art. 2.007 de la Ley de *702 Municipios Autónomos, supra, identificó el derecho a rein-tegro de arbitrios pagados antes de comenzar la obra y al momento de iniciada. Dependiendo de la fase en que la obra se encuentre será la cuantía del reintegro que se recibirá. Asimismo, implantó un término para que proceda el reintegro al señalar que esta acción se debe ejercer den-tro del término de seis meses desde que se expidió el recibo de pago del arbitrio determinado. Así lo dispuso el legisla-dor en un lenguaje claro que no necesita interpretación alguna.
Los hechos demuestran que el término de seis meses para solicitar el reintegro por el pago de arbitrios de cons-trucción había transcurrido. Por lo tanto, independiente de las razones para ello, Muñiz Burgos, Inc. no tiene derecho al reintegro de los arbitrios pagados cuya determinación aceptó como final. Lo mismo sucede en cuanto al pago de patentes, en cuyo caso no existe una determinación de de-ficiencia por la cual procede el reintegro o crédito por el alegado pago de patentes en exceso. Cualquier acción para ello prescribió ya que han transcurrido más de cuatro años desde la declaración de volumen de negocios presentada por Muñiz Burgos, Inc., o tres años desde el pago de la patente.
Los fundamentos expuestos en la Opinión mayoritaria conllevan derogar el término estatuido por el legislador e ignorar que incluso la orden de cambio más drástica que pueda tener una obra de construcción —la de no cons-truirla en su totalidad— tiene un término de seis meses para su ejercicio. El no cumplir con el referido término im-pediría el recobro total del arbitrio pagado. Sin embargo, la postura que sostiene la Opinión mayoritaria reconoce a las restantes órdenes de cambio, como la que nos ocupa, una acción de reintegro que genera mayores derechos para re-cobrar lo pagado en exceso, aun cuando haya transcurrido ese término. De esta forma se vulnera la razón de ser del término de seis meses.
*703 En cuanto a las patentes, la Opinión mayoritaria deter-mina un nuevo punto de partida por el cual se puede soli-citar el reintegro del pago de patentes en exceso e ignora el mecanismo dispuesto por el legislador para atender situa-ciones en las que se reclama el reintegro o crédito. Como establecimos, el legislador específicamente determinó cuándo se puede conceder esa prórroga en acuerdo con el Director de Finanzas. Esa situación no responde a los he-chos ante nuestra consideración.
La Opinión mayoritaria concluye que no procede el re-clamo de Muñiz Burgos, Inc. al no poder avalar su preten-sión de activar el término prescriptivo desde que se aprobó la orden deductiva, luego de aceptada y finalizada la obra. Ello, debido a que no estamos en condiciones de determi-nar a qué respondió la modificación de la obra. A nuestro juicio, la razón no es determinante por los fundamentos que hemos expuesto en esta Opinión.
No podemos obviar que los arbitrios de construcción, al igual que las patentes, constituyen el ingreso principal de los gobiernos municipales. Es por ello que el legislador con-templó cualquier devolución de esos ingresos municipales en términos cortos que no exceden el año fiscal. La inter-pretación que hoy se pretende adoptar transgrede no sola-mente la letra de la ley, sino la política pública de proteger al erario municipal.
IV
Por los argumentos antes expresados, concurro respe-tuosamente con el dictamen de la Opinión mayoritaria y la Sentencia emitida por el Tribunal.

 No existe ante este Tribunal un planteamiento sobre la constitucionalidad o no de los términos fijados. Tampoco se cuestionó si los mismos son sumamente one-rosos para reclamar el reintegro. La única controversia a dilucidar consiste en de-terminar desde cuándo comienza el periodo para solicitar reintegros de patentes municipales y arbitrios de construcción. En estas circunstancias, solo nos corres-ponde interpretar y aplicar la ley aprobada.
De otra parte, coincidimos con la decisión de la mayoría de este Tribunal de que no procede imponer honorarios de abogado contra el municipio de Yauco.

 Nótese que ello es cónsono con el Art. 2.002 de la Ley de Municipios Autóno-mos que permite computar arbitrios sobre los cambios en el proyecto que constituyan una ampliación. 21 L.P.R.A. see. 4052. La enmienda al Art. 2.007 surge de la apro-bación de la Ley Núm. 258-2004.